## George P. Steel Iron Co. *v.* R. W. Jacobs and John Jacobs, Appellants.

*Motion to open judgment—Chancery powers of court below.*

On a motion to open judgment, when there is more than oath against oath, it is the province of the judge who hears the motion, sitting as a chancellor, to examine the evidence and to decide in the first instance whether the judgment shall be opened.

When it comes to the question of the weight of the evidence it is for him to decide to which side the scales incline. If he is in doubt upon this question, or as to the credibility of witnesses, a prudent course would suggest the aid of a jury. Subject to the foregoing it is proper to say that if the testimony taken on the rule would be sufficient to justify the submission of the question to a jury, the court may in its discretion make an order to open, but if on the testimony so taken, the court would set aside a verdict for the defendant, the court should refuse to open.

*Appeals—Appellate review of refusal to open judgment.*

The duty of the appellate court is not so much to examine and weigh minutely the testimony adduced by the parties, as to determine, upon a review of the entire record, whether the legal discretion vested in the court below has been abused.

*Attorney's commissions—Judgment note.*

Attorney's commissions on a judgment note will be restricted to the debt for which judgment is entered and should be calculated at the stipulated rate on the amount of the principal sum due as indicated by the record.

Argued March 21, 1898.    Appeal, No. 6, March T., 1898, by defendants, from order of C. P. Huntingdon Co., Sept. T., 1896, No. 97, discharging rule to open judgment.    Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.    Decree modified.

Rule to open judgment.    Before BAILEY, P. J.

It appears from the record that by covenant of attorney judgment was confessed against defendants for the sum of $477.32, being for $365.30 principal debt and $111 attorney's commissions, with interest from January 26, 1896 ; that the note originally called for $2,240 upon which payments by instalments had been made, and judgment was entered for the balance due and the attorney's commissions included a percentage on the original amount set forth in the note.

The court below refused to open the judgment and defendants appealed.

*Error assigned* was in entering the following decree : " And now April 5, 1897, after hearing and upon due consideration the rule to open the judgment is discharged at the cost of the petitioner and it is ordered that plaintiff has leave to proceed with fi. fa."

*H. H. Waite,* for appellants.—Under the doctrine of the case of Ins. Co. v. Williams, 155 Pa. 405, the court below was warranted in opening this judgment.    To the same point cited Hardwick v. Pollock, 3 Dist. Rep. 245 ; Stockwell v. Webster, 160 Pa. 473 ; Heimgartner v. Stewart, 180 Pa. 500.

*John D. Dorris,* with him *A. O. Furst,* for appellee.—We do

not understand that the question of attorney's commissions is raised by the assignments of error.

Under the facts of the case and authority of Imler v. Imler, 94 Pa. 372, the plaintiff is clearly entitled to five per cent on the whole principal sum.

OPINION BY SMITH, J., December 15, 1898:

This cause comes here on appeal by the defendants, from the refusal of the court below to open the judgment.    From the record presented here we learn that on January 29, 1894, the defendants gave a judgment note for $2,237.61, with interest, and five per cent attorney's commission as collection fees, payable three months after date, in settlement of the account of R. W. Jacobs with the plaintiff.    At the same time the parties agreed, by a separate writing, that the note might be paid by instalments of $300 every three months, and that judgment should not be entered on the note, unless default should be made in payment of any of the instalments.    October 3, 1896, judgment was entered for $477.23, being for $365.35, remainder of the principal debt and $111.88, attorney's commissions, and an execution was issued therefor, whereupon this application to stay the writ and open the judgment was made.    It was alleged in the petition, in substance, that in November, 1893, the defendant, R. W. Jacobs, purchased a steam boiler from the plaintiff, which was guaranteed to be perfect and do No. 1 work, but that on trial it proved defective in construction, and by reason of this the defendants sustained damage; that about the time of the settlement, in which the note was given, this defective boiler was mentioned and the plaintiff, represented by G. P. Steel, said that if the boiler did not work satisfactorily after making the changes which he suggested, the defendant should only pay the amount of the note, less the cost and expenses of · the boiler.    The petitioner further averred that after giving the note, he made the changes in the boiler as suggested by Steel, and upon testing it again found it still defective; that of this the plaintiff was notified, and it was then agreed that the defendant should pay the amount of the note less $316.40.

These averments were supported by the deposition of the petitioner, under the rule to show cause, when further evidence in defense was offered consisting of letters from the plaintiff.

In a letter to R. W. Jacobs, dated August 2, 1894, replying to one of the preceding day, the plaintiff said: "We desire to say positively that we will not accept the credit on the notes until the last payment, and will also say at that time we will not allow the amount of money you claim; however, Mr. Steel will be in town both on Friday and Saturday, and you can go over the matter fully with him at that time." In a letter dated September 18, 1894, the plaintiff wrote, inter alia: "We understand you are buying other boilers, and will not buy boilers from us until we take back the one which you have that you say is defected. Upon this subject we have written you a number of times, and told you we would take the boiler back, but not until the last settlement. . . . You must remember also, that it will cost you between $200 and $300 for collection of this note which we are obliged to pay Dorris & Son. Had you made your payments to us any way promptly, and had not gone into matters as you did, you would not have gotten into this position. Now with all these facts in your mind, it costing us more than the amount of the boiler to make the collections from Dorris, . . . . you now switch off on to selling other goods." In the last letter, dated October 11, 1894, the plaintiff says: "To make a long story short, if you will pay to Dorris & Son the amount they charge us for their services in your case, we will take back the boiler without further delay. This charge of theirs, which is ten per cent of your whole account, you should pay."

George P. Steel, president of the plaintiff company, made answer under oath denying all the material allegations in the petition, respecting the alleged defect in the boiler; averring that it was sold to R. W. Jacobs for about $130, and was not defective in construction or material, but was perfect and able to do perfect work, and would generate and hold steam according to the catalogue, under which it was sold and accepted by the defendant; that on January 29, 1894, he requested R. W. Jacobs to settle his account, including the cost of this boiler, and that settlement was then made and the note given "for $2,240, or thereabouts in settlement of the whole account, which the defendant owed the plaintiff." Mr. Steel denies that he ever advised or instructed the defendant to make any changes in the boiler, or to test it again, or that the plaintiff agreed

that the defendant should pay the amount of the note less $316.40 ; that it was agreed in case default should be made in any one payment, the plaintiff would have the right to enter the note and issue execution, and that execution thereon was in pursuance of this agreement. It appears by the deposition of R. W. Jacobs that at the time he failed in business, which would seem to have been quite recently, he included the balance due the plaintiff here, in a trust judgment to his father, saying, in explanation, that "It was, in case anything should happen, to protect my father."

The foregoing summary of the proceeding embraces, in substance, all the material allegations bearing on this controversy, as contained in the petition of the defendant and his own testimony in support of it, and the letters of the plaintiff, on the one hand, and in the answer of the plaintiff on the other. All the material allegations of the defendants are met by the full denial of the plaintiff. Under the rule applicable to these cases, in order to have the judgment opened, the defendant must submit further proof in corroboration of his defense, sufficient to move a chancellor to grant the relief asked. For this purpose the defendants rely mainly upon the letters referred to. It is to be noticed that in none of them is there a promise or an admission that the defendants' claim shall be allowed. In the first letter it is pointedly stated that it will not be accepted as. a credit. The most that can be said about this letter is that it was promised that Mr. Steel would go over the matter fully with the defendant. In the second letter the plaintiff admits having stated it " would take the boiler back, but not until the last settlement." At what price, or upon what terms is not stated. In the remaining letter the plaintiff says that if the defendants will pay Dorris & Son's charges, they will take the boiler without further delay. But it is not pretended that the condition of this letter has been complied with. It nowhere appears, beyond the principal defendant's personal allegation, that the plaintiff agreed to allow any credit on the note, upon which judgment is entered, or that the note would be surrendered for less than its face ; nor is there any testimony, documentary or otherwise, from which this could reasonably be inferred. Opposed to these letters, we have this defendant's admission, that he so far regarded his father's liability for the balance due

the plaintiff, that he included this balance in a larger judgment, which he confessed to his father on his own failure in business. Furthermore, although this defendant knew of the alleged defect in the boiler at the time he signed the note and the accompanying agreement, no mention is made of it in that agreement, although it was executed for the purpose of securing easier terms of payment than the note demanded. The attempt to convert a part of a sentence of the plaintiff's answer into an admission that there is but $316.40 due on the judgment, does not deserve serious notice. Undoubtedly this clause was in denial of the defendants' claim to set off that sum and not an admission in any sense, although it is not clear in expression. The items forming the plaintiff's judgment are enumerated, and by simple computation show that this claim of the defendants is unfounded. The sum of $316.40 nowhere appears in the plaintiff's claim or calculation. It is to be found only as the amount of the defendant's offset. Courts will unhesitatingly disregard a perversion so manifest and unjust.

The question in the court below, was not whether there was any evidence to corroborate the defense set up, but whether there was sufficient evidence, beyond that of oath against oath, to call upon a chancellor to act. After hearing and upon a review of the whole case, the learned judge, sitting as chancellor, came to the conclusion that the evidence was not sufficient to warrant his interposition, and he accordingly discharged the rule. The duty of this court is not so much to examine and weigh minutely the testimony adduced by the parties, as to determine, upon a review of the entire record presented here, whether the legal discretion, vested in the court below, has been abused. When there is more than oath against oath, it is the province of the judge who heard the motion, sitting as a chancellor, to examine the evidence and to decide, in the first instance, whether the judgment shall be opened. "When it comes to a question of the weight of the evidence, it is for him to decide to which side the scales incline. If he is in doubt upon this question, or as to the credibility of witnesses, a prudent course would suggest the aid of a jury. Subject to the foregoing, it is proper to say, that if the testimony taken on the rule would be sufficient to justify the submission of the question to a jury, the court may, in its discretion make an order to

open; but if, on the testimony so taken, the court would set aside a verdict for the defendant, the court should refuse to open:" The Bank's Appeal, 124 Pa. 337. This rule has often been quoted with approval by the Supreme Court and by this court, and has frequently been applied by both.

The judicial discretion and decision of the court below in these proceedings, are not confined to the question of the sufficiency of the testimony offered on behalf of the defendant; but extends to the entire evidence offered on both sides. It may not be amiss to quote from the opinion of the Supreme Court in a case in point: "There is nothing upon this record to show that the learned judge below did not properly exercise his discretion in refusing to open this judgment. There was some conflict of testimony, it is true. That, however, is no reason why the judgment should have been opened. The learned court had a right to pass upon the evidence, and has done so:" Applebee's Appeal, 126 Pa. 385. From an examination of this record, we are satisfied that in passing upon the sufficiency of the defendant's claim to a set-off, and refusing to open the judgment because of its inadequacy, the court below committed no error.

We think, however, that the judgment should be reduced on account of the charge for attorneys' commissions. The debt remaining unpaid at the time judgment was entered was, according to the plaintiff's computation, $365.35. All above that sum was voluntarily paid by the defendant before the judgment had been entered; and judgment was taken for this balance with five per cent on the whole sum for which the note was given, making $477. This the plaintiff admits. Whether the service of an attorney was necessary to collect all in excess of the judgment we cannot determine by the record. The judgment was not entered for the amount of the note, which is the usual practice, and this amount, therefore, affords no basis for reliable calculation. The court must take the record as made up and have the computation of attorneys' commissions on the judgment therein given, unless this exceeds the sum due at the time it was entered. In the latter event the question of commissions remains within the equitable control of the court. We think it the better practice, ordinarily, to restrict attorneys' commissions to the debt for which judgment is entered, and

allow, at most, the stipulated rate of commission on the principal sum due as thus indicated.   On this basis the judgment should be reduced to $365.35 with five per cent attorneys' commissions, the rate fixed by the note, added thereto, making $383.60.

. The order of the court below is reversed, and it is now ordered that judgment be entered for the plaintiff and against the defendants for the sum of $383.60 with interest from October 3, 1896, the costs to be paid by the defendants.