## P. J. Kistler, Anna M. Mehrkam, D. S. Mehrkam and T. F. Kleintop *v.* C. O. Scheirer, Appellant.

*Appeals—Appellate review of refusal to open judgment.*

The duty of the appellate court is not so much to examine and weigh minutely the testimony adduced by the parties, as to determine, upon a review of the entire record, whether the legal discretion vested in the court below has been abused.

The appellate court will not disturb a decree of the court below refusing to open a judgment when upon review of the entire evidence offered on both sides of the motion it cannot say that the court erred in the conclusion reached. Iron Co. v. Jacobs, 9 Pa. Superior Ct. 122, followed.

Argued Jan. 11, 1899. Appeal, No. 22, Jan. T., 1899, by defendant, from definitive decree of C. P. Carbon Co., Oct. T. 1896, No. 115, refusing to open judgment and let defendant into a defense. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed.

Opinion by SMITH, J.

Rule to open judgment for $750. Before CRAIG, P. J.

The facts sufficiently appear from the opinion of the court below as follows:

This is an application to open a judgment. It is addressed to our equitable discretion. Our duty is to consider the testimony submitted, and to see if a case has been made out which would justify us in making the rule absolute.

On the 3d of December, 1896, the defendant executed his judgment note under seal to the plaintiffs in the sum of $1,500, payable one day after date. This judgment note was entered of record on same day. Thus it remained until December 20, 1897, when the petition to open was presented to court, and this rule granted. Since the entry of the judgment it would appear from the testimony, that D. S. Mehrkam and Anna M. Mehrkam have released, or receipted to the defendant for their portion of it. The contention therefore is between the remaining plaintiffs and the defendant. The grounds upon which the defendant bases his application to open the judgment are that it was given without consideration, and also, under duress per

minas.  The plaintiffs reply that the judgment was given for a sufficient consideration, and that it was not given under any threats or intimidation, but voluntarily, by the defendant.

The circumstances under which the judgment note was given seem to be about these: During the year 1896, one R. Clay Hammersley was engaged in promoting a cement company enterprise under the name of the Adamant Cement Company; and, as secretary and treasurer of the company, was selling its stock to various parties.  In the latter part of the year 1896, the defendant was acting as the agent, or go-between, of Hammersley in disposing of such stock.  [He introduced Hammersley to P. J. Kistler and others; assisted in the sale of the stock, and received a commission for his services.] [1]   He negotiated the sale of stock with T. F. Kleintop for himself and his brother. [He represented that the company was a good one,] [2] and that cement stock was a paying investment, and solicited purchasers.  He received checks payable to Hammersley, for stock purchases, and delivered Hammersley's receipts therefor.  [The receipts for the stock purchasers now in question were dated September 9, 1896.   On their faith in the defendant and his representations, the plaintiffs bought the stock.] [3]   After Kistler, Mehrkam, Kleintop and others became dissatisfied with their purchase, and demanded their money back, he (defendant) corresponded with Hammersley in reference thereto; and afterwards received Hammersley's checks, payable to his order, for the plaintiffs, for the several sums they had subscribed and paid on the stock.  These checks he indorsed and delivered to the plaintiffs and received in return the receipts of subscription of all the plaintiffs except Kistler—they assigning them over to Hammersley.  On the protest and return of the checks indorsed by defendant, the plaintiffs demanded the money of defendant, alleged that he was liable to pay on his indorsements, and threatened to bring suit therefor, and to take steps to remove him from his position with the railroad company if he did not pay or secure them.  Thereupon, on the 3d of December following, the defendant executed and delivered the judgment note in question.

[Without going into detail of the testimony, it seems to us that the defendant's connection with the sale of stock, his agency, his promises and representations to the plaintiffs, and

his activity therein, his indorsement of the checks without re-course, and reception of the assignments at the time of the delivery of the indorsed checks, created such a moral and real consideration that he cannot set up want of it now, after he has confessed judgment therefor under seal.] [4] It might be sufficient to say of the judgment note, that being sealed, that of itself imports consideration. But the plaintiffs sur-rendered their receipts of payment on the stock when they accepted the checks indorsed by the defendant, and these have never been returned, except in the case of P. J. Kistler, as al-ready stated. The indorsement of the checks alone was liabil-ity and consideration. In Clark on Contracts, p. 149, it is said : " There may even be a consideration without the accrual of any benefits at all to the promiser. It is sufficient if something real has been done, forborne, suffered or undertaken by the prom-isee. If he has suffered any detriment, however slight, or though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given a consideration."

In 6 Amer. & Eng. Ency. of Law (2d ed.), p. 678, a valu-able consideration is said " to consist either in some right, in-terest, profit, or benefit accruing to the party who makes the promise, or some forearance, detriment, loss, responsibility, act, labor, or service given, suffered, or undertaken by the other to whom it is made."

In Austyn v. M'Lure, 4 Dallas, 227, it is stated that the smallest spark of benefit or accommodation is sufficient to cre-ate a valid consideration for the promise, and this is restated in Bixler v. Ream, 3 P. & W. 282.

We come now to the charge that the judgment note was signed under duress per minas. There is testimony that the plaintiffs were anxious to be secured for the money represented by the protested checks ; they threatened to bring suit therefor ; they made other statements to get the defendant to secure their money ; they even threatened to move for the discharge of the defendant if he did not secure them.

But the evidence does not satisfy us that the defendant was not a free agent at the time he executed the note. [There is no evidence that the defendant was so overcome by fear or other trouble and his mind so dominated that he lost his will

power. (He was a man in the prime of life, in good health, intelligent and capable of doing responsible work. Then, too, he signed the note in the presence of a respectable attorney, whose office he voluntarily visited, without anything unusual taking place at the time. Doubtless he was troubled. This is evident because he went to consult his wife first before signing. He did go home after the note was drawn up, and then returned and signed the note without any circumstances of fear, or threat, or other improper influences attending the signing. There were no features attending the giving of the note like those in Jordan v. Elliot, 12 W. N. C. 56.) For aught we can gather from the testimony, the defendant's will power and judgment were free from anything calculated to deprive him of them at the time of the signing of the note.] [5]

If we assume that the defendant signed the judgment note under duress, then it is unaccountable that he failed to move in the matter until over a year after the judgment was a lien on his property, and until after plaintiffs demanded payment of interest. In the case of Jordan v. Elliot, supra, application to open the judgment was made within five days after the execution of the note. This was consistent with the allegation of duress. But the same cannot be said of this defendant. He appears to have slept on his claim for over a year before he asserted it. It seems to us that this is a case where the equitable maxim vigilantibus et non dormientibus, leges subvenieunt aptly applies. [There is no allegation, nor is there any testimony to the effect, tending to excuse the defendant for not having moved immediately to set aside the judgment. By his supineness he left the public to infer the validity of the judgment, and by his inaction he forfeited his equitable right of relief.] [6] Besides, by this delay the plaintiffs may be prejudiced and deprived of a right to recover their assigned receipts to Hammersley, and of securing the money paid to him.

Upon discovery of fraud, the right to rescind must be promptly exercised. Delay after acquiring knowledge will generally bar relief, especially when the delay has caused injustice to the opposite party: 12 Am. & Eng. Ency. of Law, 603.

Again, it is said in the same book, page 632: "Laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances

causing prejudice to an adverse party, operates as a bar in a court of equity."

In Smith v. Duncan, 16 N. J. Eq. 240, laches is defined to be "inexcusable negligence and inattention to one's interests."

It is not improper to remark, further, that if it should appear that both plaintiffs and defendant were innocent of fraud or wrongdoing in the transaction, then, as between them, the equitable principle would apply that, as between innocent persons, he who is the cause of the injury must suffer its consequences : Millingar v. Sorg, 61 Pa. 471 ; DeTurck v. Matz, 180 Pa. 347.

Nor has the defendant in his application, nor since, offered to return to plaintiffs the assigned receipts of payment of stock received by him when he indorsed and delivered Hammersley's checks to them, or offered to secure them for the value of the receipts parted with.

Under the circumstances of this case and with some hesitation we have come to the conclusion that the rule must be dicharged. If the plaintiffs, D. S. Mehrkam and Anna M. Mehrkam, have already released, or satisfied, their portions of the judgment, and an attempt is made to collect the same from the defendant, we reserve the right to hear the defendant thereon, at any time hereafter.

Rule to open judgment discharged. Defendant appealed.

*Errors assigned* were (1–6) to the conclusions of fact and law in the opinion of the court below, reciting same. (7) In not opening judgment and letting defendant into a defense.

*James S. Biery*, with him *Balliet & Seidle*, for appellant.

*Horace Heydt*, with him *William G. Freyman* and *Eugene O. Nothstein*, for appellees.

OPINION BY SMITH, J., April 17, 1899 :

This is an appeal from the decree of the court of common pleas refusing to open a judgment entered by confession. The application was to the equitable powers of that court and we are to inquire whether the discretion vested in that tribunal has been abused, in a legal sense. The character and scope of the discretion of the common pleas and the duty of this court in

review, should be borne in mind in these cases.   In discussing this question in a recent case (Steel Iron Co. v. Jacobs, 9 Pa. Superior Ct. 122) we said: "The question in the court below, was not whether there was any evidence to corroborate the defense set up, but whether there was sufficient evidence, beyond that of oath against oath, to call upon a chancellor to act. After hearing and upon a review of the whole case, the learned judge, sitting as chancellor, came to the conclusion that the evidence was not sufficient to warrant his interposition, and he accordingly discharged the rule.   The duty of this court is not so much to examine and weigh minutely the testimony adduced by the parties, as to determine, upon a review of the entire record presented here, whether the legal discretion, vested in the court below, has been abused.   When there is more than oath against oath, it is the province of the judge who heard the motion, sitting as a chancellor, to examine the evidence and to decide, in the first instance, whether the judgment shall be opened.  'When it comes to a question of the weight of the evidence, it is for him to decide to which side the scales incline. If he is in doubt upon this question, or as to the credibility of witnesses, a prudent course would suggest the aid of a jury. Subject to the foregoing, it is proper to say, that if the testimony taken on the rule would be sufficient to justify the submission of the question to a jury, the court may, in its discretion make an order to open; but if, on the testimony so taken, the court would set aside a verdict for the defendant, the court should refuse to open:' The Bank's Appeal, 124 Pa. 337.   The judicial discretion and decision of the court below in these proceedings, are not confined to the question of the sufficiency of the testimony offered on behalf of the defendant; but extends to the entire evidence offered on both sides.   It may not be amiss to quote from the opinion of the Supreme Court in a case in point: 'There is nothing upon this record to show that the learned judge below did not properly exercise his discretion in refusing to open this judgment.   There was some conflict of testimony, it is true.   That, however, is no reason why the judgment should have been opened.   The learned court had a right to pass upon the evidence, and has done so:' Applebee's Appeal, 126 Pa. 385."   Viewing the entire evidence offered on both sides of this motion we cannot say that the court below

erred in the conclusion reached. On the contrary the determination of the judge who heard the application accords quite fully with the great preponderance of the evidence. The ultimate conclusion, on the whole evidence, rather than precision and accuracy as to minor particulars, is what we are to consider. The note upon which the judgment was entered contains all the formal legal requisites for that purpose and, prima facie, it is a valid and binding obligation. The reasons presented here against its validity are based on the defendant's version of the case and the testimony in support of this, but are in conflict with competent and material testimony in behalf of the plaintiffs, which must be taken into consideration. Indeed the fault of the appellant's contention consists largely in the failure to look beyond the testimony in support of the application. But it will be found, on examination, that the defendant's own testimony reasonably justifies the views of the learned judge relative to the consideration for the note and the mental capacity of the defendant; while the evidence, as a whole, fairly and reasonably led to the conclusion deduced therefrom. It would be profitless to enter upon a discussion of the evidence further than has been done by the learned judge, in his opinion discharging the rule. We have examined the testimony fully and find it abundant to sustain the views expressed in that opinion and the judgment entered, independent of the question of alleged laches in applying to have the judgment opened. Under the facts the alleged laches of the defendant was immaterial, and there is no abuse of discretion shown.

Judgment affirmed.